IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF NORTH CAROLINA
WESTERN DIVISION
No. 5:16-CR-74-D
No. 5:21-CV-220-D

| | |
|---|---|
| JOSHUA RAYSHAWN MELVIN, ) | |
| ) | |
| Petitioner, ) | |
| ) | |
| v. ) | **ORDER** |
| ) | |
| UNITED STATES OF AMERICA, ) | |
| ) | |
| Respondent. ) | |

On May 12, 2021, Joshua Rayshawn Melvin ("Melvin" or "petitioner") moved under 28 U.S.C. § 2255 to vacate, correct, or set aside his conviction and 444-month sentence for a horrific home invasion scheme, which included Melvin taking a four-year-old child hostage at gunpoint and threatening to drown her [D.E. 304]. Melvin has submitted a sworn declaration in support of his motion [D.E. 307]. On June 22, 2021, the United States moved to dismiss Melvin's motion for failure to state a claim under Federal Rule of Civil Procedure 12(b)(6) and filed a memorandum in support [D.E. 310, 311]. The court notified Melvin of the motion to dismiss, the consequences of failing to respond, and the response deadline [D.E. 312]. See Roseboro v. Garrison, 528 F.2d 309, 310 (4th Cir. 1975) (per curiam). On August 27, 2021, Melvin responded in opposition to the government's motion [D.E. 326]. As explained below, the court grants in part the United States' motion to dismiss and dismisses in part Melvin's section 2255 petition.

I.

Melvin and his co-defendants concocted a home invasion and robbery scheme where they would surveil potential victims at malls or other public locations for signs of wealth, place a GPS

tracker on the victims' cars to learn where they lived, then rob the victims. See PSR [D.E. 217] ¶¶ 10, 16. One of their victims operated a local nightclub in Raleigh. See id. ¶ 11. Melvin and his co-defendants selected him "because they believed that he took money from the night club home, instead of to a bank." United States v. Thorpe, 803 F. App'x 691, 693 (4th Cir.) (per curiam) (unpublished), cert. denied, 141 S. Ct. 177 (2020).

On March 16, 2015, Melvin, his co-defendants, and two others arrived at the victim's apartment and Melvin and three of his co-defendants obtained entry to the apartment by rushing the victim's son as he was entering and holding a gun to his head. See PSR ¶ 12. The victim's family was in the apartment, including his four-year-old daughter. See id. ¶ 13. Melvin took the child into a bathroom and threatened to drown her if the victim did not comply with their demands. See id. Another accomplice struck a woman in the head, forced her to the ground, placed the barrel of his gun to the back of her head threatening to kill her, then kicked her in the head and struck her in the face with his pistol. See id. After directing the intruders to $5,000 stashed in his bedroom, the victim attempted to escape, and Melvin shot him in his leg. See id. ¶ 14.

The four men fled the apartment and into a vehicle driven by one of Melvin's co-defendants. See id. ¶ 15. A neighbor who witnessed the events called the police and provided identifying information. See id. Officers with the Morrisville Police Department stopped the vehicle, but one of the co-defendants brandished a gun at the officers, resulting in return fire, and the robbers were able to escape. See id.

On March 16, 2016, a grand jury indicted Melvin for conspiracy to interfere with commerce by robbery in violation of 18 U.S.C. § 1951 (count one); interfering with commerce by robbery and aiding and abetting in violation of 18 U.S.C. §§ 2 and 1951 (count two); and discharging a firearm during and in relation to a crime of violence and aiding and abetting in violation of 18 U.S.C. §§ 2

2

and 924(c) (count three). See [D.E. 1]. Melvin pleaded not guilty and proceeded to trial. See Arraignment [D.E. 99]; Trial Tr. [D.E. 269–272].

At the pretrial conference, Melvin's defense counsel mentioned the admissibility of testimony by both a cooperating co-defendant (Diggs) and a cooperating witness (Washington) that Melvin threatened Diggs on the day of their arraignment. See Pre-Trial Conf. Tr. [D.E. 266] 31–36; cf. Pet'r Decl. [D.E. 307] 1. Defense counsel raised the possibility that he might need to testify, because he had been in the courtroom that day and observed Melvin and his co-defendants "talking, laughing a little bit, acting like good friends at a reunion." [D.E. 266] 32. However, defense counsel admitted that he did not hear anything that Melvin or the co-defendants said, and told the court that he would not testify. Id. at 34–36.

At trial, Diggs testified that Melvin threatened him when they saw each other in the courthouse holding cells on the day of their arraignment, but that Melvin did not say anything to Diggs in the courtroom. See Trial Tr. [D.E. 225] 49–52; see also [D.E. 266] 32. Washington testified that when Melvin returned to jail from court that day, he "told [Washington] that he ran into his co-defendants at the federal courthouse . . . and [made] sure they wouldn't go to court." Trial Tr. [D.E. 226] 82. Washington was not at the courthouse and did not personally overhear any conversation between Melvin and Diggs. See [D.E. 226] 82. Washington also testified that he had never spoken to Diggs directly. Diggs testified that he told Washington "what I was indicted with[,]" but that he did not discuss anything else about the case with Washington. Compare [D.E. 226] 89–90 with [D.E. 225] 69–70. The court gave limiting instructions to the jury in considering this testimony. [D.E. 225] 50–51; [D.E. 226] 86–87. Defense counsel vigorously cross-examined both witnesses and questioned their credibility in closing argument. [D.E. 225] 75–78; [D.E. 226] 87–96; see also [D.E. 272] 155–161 (closing argument). Defense counsel also introduced into evidence a

3

declaration from a deputy United States Marshal who transported Melvin and Diggs to court for their arraignment, indicating that he "did not observe any incidents involving any of the said detainees." [D.E. 272] 93–95. On December 5, 2016, a jury convicted Melvin of all three counts. See [D.E. 172].

On April 5, 2017, the court held Melvin's sentencing hearing. See [D.E. 234]; Sentencing Tr. [D.E. 265]. At the hearing, the court adopted the facts set forth in the Presentence Investigation Report ("PSR") and resolved Melvin's objections. See Fed. R. Crim. P. 32(i)(3)(A)–(B); Sentencing Tr. at 3–17; PSR. The court calculated Melvin's offense level to be 36, his criminal history category to be VI, and his advisory guideline range to be 324 to 405 months' imprisonment each on counts one and two, with a mandatory consecutive sentence of ten years on count three. See Sentencing Tr. at 17–18. After thoroughly considering the arguments of counsel and the entire record, the court sentenced Melvin to consecutive terms of imprisonment of 162 months each on counts one and two, and 120 months on count three, for a total term of imprisonment of 444 months. See id. at 18–32; [D.E. 238]. Melvin appealed. See [D.E. 249]. On March 2, 2020, the United States Court of Appeals for the Fourth Circuit affirmed Melvin's convictions and sentence, including the court's application of two Guidelines enhancements. See Thorpe, 803 F. App'x at 694.

In his motion to vacate, Melvin alleges ineffective assistance of counsel based on counsel's failure to: (1) "raise the Rosemond objection and defense;" (2) object to two sentencing enhancements; (3) properly advise Melvin during plea negotiations, causing him to reject a plea offer; and (4) adequately represent Melvin at trial due to a conflict of interest. Mem. Supp. Mot. Vacate [D.E. 304-1] 5–11.

II.

A motion to dismiss under Rule 12(b)(6) of the Federal Rules of Civil Procedure for "failure

4

to state a claim upon which relief can be granted" tests a complaint's legal and factual sufficiency. See Ashcroft v. Iqbal, 556 U.S. 662, 677–78 (2009); Bell Atl. Corp. v. Twombly, 550 U.S. 544, 555–63, 570 (2007); Coleman v. Md. Court of Appeals, 626 F.3d 187, 190 (4th Cir. 2010), aff'd, 566 U.S. 30 (2012); Giarratano v. Johnson, 521 F.3d 298, 302 (4th Cir. 2008); accord Erickson v. Pardus, 551 U.S. 89, 93–94 (2007) (per curiam). In considering a motion to dismiss, a court need not accept a complaint's legal conclusions. See, e.g., Iqbal, 556 U.S. at 678. Similarly, a court "need not accept as true unwarranted inferences, unreasonable conclusions, or arguments." Giarratano, 521 F.3d at 302 (quotation omitted); see Iqbal, 556 U.S. at 677–79. Moreover, a court may take judicial notice of public records without converting a motion to dismiss into a motion for summary judgment. See, e.g., Fed. R. Evid. 201(d); Tellabs, Inc. v. Makor Issues & Rts., Ltd., 551 U.S. 308, 322 (2007); Philips v. Pitt Cnty. Mem'l Hosp., 572 F.3d 176, 180 (4th Cir. 2009). In reviewing a section 2255 motion, the court is not limited to the motion itself. The court may consider "the files and records of the case." 28 U.S.C. § 2255(b); see United States v. McGill, 11 F.3d 223, 225 (1st Cir. 1993). Likewise, a court may rely on its own familiarity with the case. See, e.g., Blackledge v. Allison, 431 U.S. 63, 74 n.4 (1977); United States v. Dyess, 730 F.3d 354, 359–60 (4th Cir. 2013).

The "Sixth Amendment entitles criminal defendants to the effective assistance of counsel—that is, representation that does not fall below an objective standard of reasonableness in light of prevailing professional norms." Bobby v. Van Hook, 558 U.S. 4, 7 (2009) (per curiam) (quotations omitted). The Sixth Amendment right to counsel extends to all critical stages of a criminal proceeding, including plea negotiations, trial, sentencing, and appeal. See, e.g., Lee v. United States, 137 S. Ct. 1958, 1964–65 (2017); Lafler v. Cooper, 566 U.S. 156, 164–65 (2012); Missouri v. Frye, 566 U.S. 134, 140 (2012); Glover v. United States, 531 U.S. 198, 203–04 (2001).

5

"[S]entencing is a critical stage of trial at which a defendant is entitled to effective assistance of counsel, and a sentence imposed without effective assistance must be vacated and reimposed to permit facts in mitigation of punishment to be fully and freely developed." United States v. Breckenridge, 93 F.3d 132, 135 (4th Cir. 1996); see Glover, 531 U.S. at 203–04. To state a claim of ineffective assistance of counsel in violation of the Sixth Amendment, a defendant must show that his attorney's performance fell below an objective standard of reasonableness and that he suffered prejudice as a result. See Strickland v. Washington, 466 U.S. 668, 687–91 (1984); United States v. Mayhew, 995 F.3d 171, 176 (4th Cir. 2021).

When determining whether counsel's representation was objectively unreasonable, a court must be "highly deferential" to counsel's performance and must attempt to "eliminate the distorting effects of hindsight." Strickland, 466 U.S. at 689. Therefore, the "court must indulge a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance." Id. A party also must show that counsel's deficient performance prejudiced the party. See id. at 691–96. A party does so by showing that there is a "reasonable probability" that, but for the deficiency, "the result of the proceeding would have been different." Id. at 694.

A.

Citing Rosemond v. United States, 572 U.S. 65 (2014), Melvin argues he received ineffective assistance of trial counsel concerning count three based on counsel's failure "to ensure that the government prove that [Melvin] had 'advance knowledge' that the firearm would be discharged during the crime, as the government had charged." Mem. Supp. Mot. Vacate 4–5. In Rosemond, the Court held that 18 U.S.C. § 924(c) and § 2 require the government to prove that the defendant actively participated in the underlying violent crime with advance knowledge that a confederate

6

would use or carry a gun during the violent crime's commission. See Rosemond, 572 U.S. at 67, 77–82.

Melvin has not plausibly alleged deficient performance in light of the governing law, the jury instructions, and the substantial evidence presented at trial. See United States v. Benson, 957 F.3d 218, 237–39 (4th Cir.), cert. denied sub nom. Brown v. United States, 141 S. Ct. 934 (2020). Alternatively, Melvin has not plausibly alleged "that there is a reasonable probability that, but for counsel's [alleged] unprofessional errors, the result of the proceeding would have been different." Strickland, 466 U.S. at 694; see Lee, 137 S. Ct. at 1967–69; Hill v. Lockhart, 474 U.S. 52, 59 (1985); Fields v. Att'y Gen. of Md., 956 F.2d 1290, 1297 (4th Cir. 1992). Accordingly, Melvin has not plausibly alleged prejudice from the alleged error, and this claim fails.

B.

As for Melvin's claim that counsel failed to object to the court's imposition of two guideline enhancements, Melvin may not use section 2255 to challenge the calculation of his advisory guideline range. See United States v. Foote, 784 F.3d 931, 936–40 (4th Cir. 2015); United States v. Pregent, 190 F.3d 279, 283–84 (4th Cir. 1999); United States v. Mikalajunas, 186 F.3d 490, 495–96 (1999). Thus, this claim fails. Alternatively, and in any event, ample record evidence supported the enhancements. See Sent. Tr. [D.E. 265] 5–17.

Alternatively, Melvin has not plausibly alleged prejudice concerning counsel's performance at sentencing. To prove prejudice from deficient performance at sentencing, Melvin must prove a reasonable probability exists that he would have been sentenced differently if the error had not occurred. See Sears v. Upton, 561 U.S. 945, 955–56 (2010); United States v. Carthorne, 878 F.3d 458, 469–70 (4th Cir. 2017). "A reasonable probability is a probability sufficient to undermine confidence in the outcome." Strickland, 466 U.S. at 694.

7

Considering the entire record, Melvin has not plausibly alleged that counsel could have done something differently to obtain a different sentence. On the contrary, counsel performed ably. Before the sentencing hearing, counsel filed objections to the PSR, submitted a sentencing memorandum on Melvin's behalf that thoroughly addressed the objections and the section 3553(a) factors, and argued his objections and section 3553(a) factors at the sentencing hearing. See [D.E. 217] 19–23; [D.E. 230]; [D.E. 265] 6–17. Counsel also (unsuccessfully) appealed the court's imposition of these enhancement and calculation of the advisory guideline range. See Thorpe, 803 F. App'x at 693–94. Counsel's performance reflected substantial preparation and tactical decisionmaking. See Knowles v. Mirzayance, 556 U.S. 111, 123 (2009) (stating defense counsel does not perform deficiently by failing "to pursue every claim or defense, regardless of its merit, viability, or realistic chance for success"); Strickland, 466 U.S. at 690 ("[S]trategic choices made after thorough investigation of law and facts relevant to plausible options are virtually unchallengeable."). Accordingly, Melvin's claim concerning sentencing fails.

C.

Melvin claims that his counsel's performance was deficient due to an alleged conflict of interest. "The effective performance of counsel requires meaningful compliance with the duty of loyalty and the duty to avoid conflicts of interest, and a breach of these basic duties can lead to ineffective representation." United States v. Tatum, 943 F.2d 370, 375 (4th Cir.1991); Cuyler v. Sullivan, 446 U.S. 335, 345–50 (1980); see also Strickland, 466 U.S. at 692; United States v. Nicholson, 475 F.3d 241, 249 (4th Cir. 2007). In order to state a claim concerning a conflict of interest, Melvin must plausibly allege "that (1) [his] lawyer operated under a 'conflict of interest' and (2) such conflict 'adversely affected his lawyer's performance.'" United States v. Nicholson, 611

F.3d 191, 195 n.2 (4th Cir. 2010) (quoting Sullivan, 446 U.S. at 348). "[T]he possibility of conflict is insufficient to impugn a criminal conviction." Sullivan, 446 U.S. at 350.

Considering Melvin's allegations and the entire record, no competent attorney would have believed he needed to withdraw and testify under these circumstances, where counsel owed no professional duty to either Diggs or Washington and did not actually witness anything to which he could testify. On the contrary, defense counsel's strategic decisions concerning how to impeach the testimony of Diggs and Washington falls comfortably within the wide range of professionally competent representation. Thus, Melvin has not plausibly alleged any conflict of interest or how that alleged conflict adversely affected counsel's performance. See, e.g., Iqbal, 556 U.S. at 677–78; Cuyler, 446 U.S. at 345–50. Thus, the claim fails.

D.

Melvin alleges that he asked defense counsel to consult with the government about a plea agreement, and that defense counsel obtained "a plea deal that consisted of [Melvin] pleading to one count of 18 U.S.C. §§ 1951 and associate § 924(c)(1)(A)." Pet'r Decl. [D.E. 307] 2. Melvin also alleges that defense counsel advised him to reject the plea deal and go to trial because "the evidence was insufficient to prove that [Melvin] violated interstate commerce." Id.; see Mem. Supp. Mot. Vacate [D.E. 304-1] 8–9.[1] According to Melvin, he accepted this erroneous advice, went to trial, got

---

[1] At trial, defense counsel asked the court to acquit Melvin on counts one and two of the indictment because the evidence was insufficient to demonstrate that the robbery affected interstate commerce, requested an additional jury instruction "focused on private individuals being robbed," and argued to the jury that it "did not hear a lot of evidence about this robbery affecting interstate commerce." [D.E. 272] 6–10, 84–88, 97, 155, 163–68. Defense counsel also argued on appeal that the government failed to produce sufficient evidence of an interstate commerce connection, which the Fourth Circuit rejected. Compare Appellants' Br., United States v. Thorpe, No. 17-4229 (4th Cir. Aug. 14, 2018), [D.E. 36] 23–35; with Thorpe, 803 F. App'x at 692–93.

9

convicted, and received a sentence much longer than he would have received if he pleaded guilty pursuant to the plea offer.

The Sixth Amendment right to counsel applies to plea bargaining and prejudice occurs when, absent deficient advice, the defendant would have accepted a plea that would have resulted in a better outcome. See Lafler, 566 U.S. at 162–64. Melvin has stated a claim about performance and prejudice, and an evidentiary hearing is needed. See id., at 172–74; Mayhew, 995 F.3d at 178–79; cf. United States v. Taylor, 754 F.3d 217, 222 (4th Cir. 2014), aff'd, 579 U.S. 301 (2016). The court directs Magistrate Judge Numbers to hold an evidentiary hearing on this claim, to hear Melvin's testimony about the alleged advice, to hear the testimony of Melvin's former defense counsel concerning plea negotiations and his advice to Melvin, and to issue a memorandum and recommendation on this remaining claim.

### III.

In sum, the court GRANTS IN PART respondent's motion to dismiss [D.E. 310] and DISMISSES IN PART petitioner's motion [D.E. 304]. The court DISMISSES petitioner's ineffective assistance claims concerning counsel's performance at petitioner's trial and sentencing hearing. However, the court permits petitioner to proceed with his claim that counsel misadvised him to reject a plea agreement and proceed to trial. The court REFERS petitioner's remaining claim to Judge Numbers for a prompt evidentiary hearing and a memorandum and recommendation.

SO ORDERED. This 31 day of March, 2022.

JAMES C. DEVER III
United States District Judge